We will next hear Giordano and D'Alela v. Hohns. Mr. Heim. Good afternoon and may it please the court. My name is David Heim. I am here on behalf of the appellants Daniel D'Alela and Frank Giordano. I am joined by my colleague Kirstie DeGroote who is at council table. I would like to reserve two minutes of rebuttal time for the appellants. The underlying case here was filed in state court. It was a defamation case. We are familiar with the facts. Could you tell us what jurisdictional discovery do you want? Absolutely, Judge. And I will tell you what we plan to do is to have Mr. DeGroote address the second issue of the scope of employment. And I'm going to address what I think the court wrote to the parties about whether or not this commission is a federal agency. I'm sorry, it wasn't clear from that break up which of you was covering the scope of employment issue. Is that a scope of employment? Okay. If you want to cover federal agency, just go to federal agency and I'll ask your friend that. And Mr. DeGroote will be more than happy to answer that question, Judge. I'm arguing the federal agency issue. Basically, the issue is whether or not the commission, which is the U.S. Semi-Quincentennial Commission, created by an act of Congress, is an independent establishment of the United States. What's the test that we should use? What are the factors that we should take account of? And how should we articulate that test? I think the test can be broken down and simplified as follows. Number one, what does Congress say about it? Obviously, if Congress expresses an intent that the federal agency or the entity, the federal establishment at issue, is in fact a federal agency under the FTCA, it must be treated as such. All right. But we don't have that here. What do we look to next? Well, one may say Congress should do that in every instance because they know exactly how to do it, and they do it in almost all instances. No other circuit has said that this has to be spelled out. So then what? So beyond whether or not Congress has expressed an intent, we believe, and this is based on U.S. Supreme Court case law, that essentially the test should be whether or not this federal agency is under sufficient amount of control by the federal government such that it can be characterized as an agent and not some sort of independent instrumentality of the federal government. And the test, I think, that makes most sense is just to go back to the restatement second of agency, which does spell out the degree of control that is necessary for a principle, for one entity to be deemed the principle of an agent. And if you apply that test, that's a test that's recognized under the common law, that's easily articulable and workable. What is not workable are the other extraneous factors that some of these other circuit courts, the unlimited case or the excavations unlimited case, the Seventh Circuit case, the Ninth Circuit case, when they're talking about, well, is there government funding? That should be part of the test. If you really dig down into the Supreme Court cases, the Maryland case, the Loeb case, they are not focusing on funding from Congress for good reason. So why is there enough control here? There's not enough control here, Judge. If you take a look at the Act, the Act sets forth a broad purpose for the creation of this commission. We have a federal purpose. We have a federal mission. We have some people being appointed from federal positions. Okay?  But the structure of the entity, there are 24 total members, eight of which, admittedly, four of them are members of the House of Representatives and four of them are senators. Okay? They're federal employees, of course. But 16 of the 24, that is a two-thirds majority, a super majority, are actually private citizens. And the Act says, of course, it actually defines what a private citizen is. It says not a federal employee. At least until they're appointed, and then it's a legal question that we're going to address. That's true. That is true. But these private citizens are not federal employees. Aren't they selected also through congressional involvement? They are, Judge. They are. And we also have here the ex officio members, the Attorney General of the United States, the Secretary of the Interior, the Secretary of State, of Defense, of Education, the Librarian of Congress, the Archivist of the United States. If we're looking to the structure for federal control, why isn't it enough to have eight members of Congress and much of the Cabinet as part of the governance here? Well, first of all, the ex officio members are not voting members. Right? They're not in control of the entity. A quorum of the entity is a simple majority. So a quorum of this commission can meet and just be 12 people, and they can just be 12 private citizens, not even federal employees, and make all the decisions. I got that point. But they do have to report back to Congress. Secondly, they do. They have to report back to Congress one time a year for their funding, just like all other different boards and entities and many on all the boards that were addressed in the Supreme Court cases that I just mentioned. They all dealt with federal funds, and they all dealt with federal administration of those funds in one way or another. That is simply not a test. It would swallow the test and swallow the issue if you just looked at whether or not federal funds were appropriated. There's too many federal funds appropriated. This can't be the test. What is the test is the element of control, and Judge Crouch had mentioned that, yes, the two-thirds majority of the members are appointed by Congress and the Senate or the majority and the minority of Congress and the Senate. That's true. But they're appointed as basically not lifetime appointments. They're appointed as for the life of the commission, which is in 2027. There is nothing in the act that says that they can be fired, for example, like an employee would be fired by their principal or employer. They are appointed, and the people that appoint them can't do anything to them about how they function, what they do on the commission, and what they decide. Now, that is a very significant point when you're talking about control and whether or not the commission can be deemed an agent of the federal government. Sure, they're appointed. But just like your honors are independent of your appointees, they can't be fired. And that's a very, very significant element to this statute. If you take a look at Section 4C, it talks about the term and the vacancies. It talks about a member shall be appointed for the life of the commission. And then it talks about vacancies and how they're filled, which is just how that position was filled previously. It does not talk about Congress or any other federal entity having the right to fire them. Why does that matter? That matters if you look at the Maryland case, which involved the pilot error case. And there was this pilot who was a National Guardsman, and he was also the federal caretaker, right? And he took care of federal property. He was paid by federal funds, okay? The Supreme Court looked at him and said, he's not a federal employee, though. Why? Because he's not capable of being fired and he's not supervised by anybody of the federal – any person or entity of the federal government. That is one of a number of factors. Here we have $50 million at this point from Congress and from the reports that have been filed publicly with Congress in those official records, it appears that it's about 4 percent of funding from private sources, so less than 1 percent. If we've got – I'm sorry, 10 percent. If we've got 90 percent of the funding that is coming from Congress, we have Congress saying, use the mails as if you were an arm of the federal government, and we've got the governance structure that we see in place. Why isn't that enough? What can you point us to where there's a combination of factors like that, and a court has said, that's not sufficient? Well, Judge, in the Orleans case, which I think was a 1976 case, and it involved the Ohio community activity agencies, which were created by a federal act of Congress, and they created organizations which they looked after kids, kind of like a boys and girls club, something like that. Those agencies were 100 percent funded under the OAE or OEA, I think, or the EOA. I might get my alphabet. Funding alone may not be enough. Funding alone is definitely not enough. So you can't just go to, you know, $50 million were appropriated, and the $50 million means it's got to be a federal agency, because there's so much money involved. There's federal appropriations all over the place, trillions of dollars probably, on an annual basis. We can't just say, well, there's money. There's federal money, therefore it's a federal agency. The question is, does the government, does the federal government, get into the details? As the Supreme Court has said in Orleans, does it get into the day-to-day operations of what's going on with this entity? And that was the language, the specific language that the Supreme Court used in Orleans. Does it get into the day-to-day operations of how they spend that money? Is there any reason why the analysis here for purposes of, ultimately for purposes of sovereign immunity, considering whether something is an arm or instrumentality of the federal government, should be different than the test that we've adopted and articulated with various factors for 11th Amendment immunity purposes? Judge, I'm not sure if I'm familiar with the 11th immunity purposes. I think the panel has given the parties an opportunity to file supplemental briefs by the 22nd of November. We fully are going to take that opportunity. I can address that there. I'm just not familiar with the 11th immunity test, Judge. But I will be, as you ask that question. I see my time is up. I'd like to yield some time to Mr. DeGroote. Thank you. May it please the Court. My name is Keira C. DeGroote, and I, along with Mr. Heim, represent the appellants in this matter. I'll begin with, and I believe Judge Bevis has some questions for me on it, the question of whether or not the lower court abused its discretion by not allowing jurisdictional discovery. The threshold question here is whether that was an abuse of discretion because the government's certification relied on facts outside of the complaint. How do we know that? I'm sorry? How do we know that? Because it's in the language of the certification itself. Okay. And I'll read that for the benefit of this Court. I based this determination on reading the complaint, as well as materials prepared in anticipation of litigation provided by staff of the United States Attorney's Office after consulting with Hans, Griffin, and Swanson regarding the allegations in this matter. Those are the originally named defendants. And there's a footnote saying there's some certain factual representations being disclosed here, so I'd like to hear what your friend on the other side is going to say about that. But that does look like a problem under Mello. But what are you going to do with this discovery? What is it you want? I mean, your briefing is mainly about the Brady letter. Is this all about the Brady letter? No, Your Honor, it's not. And there's really multiple questions we're looking at here. So the question of jurisdictional discovery is simply to rebut the certification, the Westfall certification, that this Court, the lower court, provides deference to. And that's what the court in Mello 2 examined. The Mello 2 court said it is not fair to limit the government to the facts alleged in the complaint. And because of that, the government should be permitted an opportunity to review facts outside of the complaint in order to so certify, the idea being that the originally named defendant should not have to go all the way through litigation if they should have been certified from the get-go. But there was a trade-off in Mello 2. The court said that because the government is allowed to consider facts outside of the complaint, if they so do that, then the plaintiff is entitled to a chance to conduct jurisdictional discovery on whatever those facts may have been. Did you preserve this argument in the district court? Yes, Your Honor, I believe we did. Now, the facts considered outside of the complaint are not known to me right now. They're not known to the court sitting before me, and they're not known to the district court. There is no way for the district court to have reviewed what those facts were in certifying that the United States should be substituted as the appropriate defendant. Well, putting aside whatever they may have considered, if we were just to look at the face of the complaint, and we can ascertain from the face of the complaint that the conduct is within the scope of employment, that would end this case, right? Yes, Your Honor, and that's a different standard of review. What would you like to look into that you think might show this to be beyond the scope of the employment? What kinds of things are you going to ask the district court to give you in discovery or order discovery of? I understand the question, and I do think it's twofold. If I'm in the avenue of jurisdictional discovery, what I'm asking the lower court for is an opportunity to review whatever it is that the government certified the scope of employment question on. I don't know what that is. However, this court is also sitting in plenary review of the second question, whether or not the conduct alleged is within the scope of employment. This court can make a factual determination on that, and if they didn't, if this court did, in fact, decide that the originally named defendants were not acting within the scope of their employment, that would answer a lot of questions today. What would you like to see, apart from the government's work product, which we have this work product dispute in their footnote, we'll hear Ms. Milley about it, but what would you ask? I mean, do you need to take depositions of these people? Are you asking for what they were subjectively thinking, which is not normally the way we approach scope of employment? What else is in dispute here, or would you try to dispute? So if I'm in that first bucket where I'm just seeking jurisdictional discovery, I'm looking for information that would allow me to rebut the government's certification that the actions were taken within the scope of employment. What would those things be? Specifically, it would be what the materials prepared for in anticipation of litigation. I understand there may be an objection to that. I think that's a question for the lower court sitting on a discovery dispute. That's not a question for what the claim is entitled to. I would also ask for what were the conversations upon which the government consulted with Hans, Griffin, and Swanson leading to such certification. All right, so this is not about taking depositions of Hans, Griffin, Swanson, or the Jane and John Doe. This is not about asking what were you thinking. This is about looking at their memos and any conversations they had with them. Yes, it's difficult for me to give you the exact scope of discovery, not knowing what they relied on. But you are not asking for depositions here. I can't tell you that as an absolute, Your Honor. To be clear, we're looking at Pennsylvania law on scope of employment, right? That's correct. In the second avenue, scope of employment only, this court in plenary review would be reviewing Pennsylvania law. Under the Pennsylvania Supreme Court has, in justice versus Lombardo in 2019, indicated that examining the reasonableness of and motive of the defendant's conduct was relevant to the question of scope of employment. Yes, and we believe in that second bucket, that scope of employment, we should have discovery as we would in any other case proceeding normally against a civilian defendant. And is it your position that under Pennsylvania law that intent and motive are relevant to scope of employment as a state law matter? Yes, because Pennsylvania law has adopted the restatement second of agency. The restatement second of agency has three factors. They are whether the conduct is the type that the employee was hired to perform, whether it was within the time and space of the employment, and whether or not it was actuated with a purpose at least in part to serve the master. We believe that the alleged conduct of the three originally named defendants fails all three of those tests. I do see that I'm out of time. I'm happy to answer questions on those points if the court would like. To be clear about the conduct that we're looking at when we're thinking about the scope here, it doesn't include any of the speech that would be time barred. That's correct. That's correct. Now, we believe that evidence is relevant in determining intent and motive in the things we've already discussed, Your Honor. But the actions which form the basis of the originally filed claims are the statements primarily made to the media, which are outside the time and space of the employment, are not within the purpose of the employment of the commissioners, and were not actuated in any part to serve the master in this case. But you don't need discovery about those. Those appear to be in the joint appendix, the particular articles that were quoted. We wouldn't need discovery on those pursuant to MILO 2 and the question of whether or not the lower court should have permitted discovery. In the second bucket, the question of whether or not they acted within the scope of employment, which is subject to plenary review sitting here today, we would rest on the facts alleged in our complaint, as we must at this stage. And we would argue today that the facts alleged in the complaint are more than sufficient, based on both the facts and the applicable law, that the conduct of the originally named defendants was not within the scope of their employment. Is that because your view is it was not intended to benefit the commission? That's one piece of it. That's the third element, and that's relating to a purpose to serve the master. And we have put forth a pretty bright-lined position. And there is no case that analyzes this exactly on point, which is binding upon this court. But where the bad act acts with the sole intent to harm the master or the employer or the commission in this case, it cannot simultaneously be that there is, in any part, a purpose to serve the master. That's why we've cited the case coming from the common police court of Pennsylvania, which is, of course, not binding upon this court. But it analyzes this very question, where a statement to the media intends to harm, in that case, the postal service. It cannot be, or at least was not appropriate at the motion to dismiss stage, to determine that that was made with the purpose or any part of that purpose to serve the master. Thank you. May it please the Court. I'm Rebecca Melle, Assistant U.S. Attorney, and I represent the appellee, the United States of America. I think I'll start by getting right to the test for a federal agency under the Federal Tort Claims Act in response to the Court's letter. I agree with appellants on that we start with the text of the statute, but the question is, which statute do we start with the text of? And here we start with the definition of federal agency in the Federal Tort Claims Act, where Congress expansively defined federal agency by way of a list of examples. We know there are examples. It's introduced by includes, and that's defined in the definition section of the FTC Act. These are illustrative examples? Those are illustrative examples, yes. Thank you, Judge Sirica. Congress then accepted only one type of entity from the definition of federal agency, and that is a contractor with the United States. And that distinction between a contractor and an agency in the briefing didn't seem to be an issue. This morning it does. This afternoon it does seem to have become one. And so let me spend a minute there. Logue and Orleans. Logue relates to the county jail that had a contract with the Marshal Service to house federal detainees. Orleans related to the Community Action Agency that I think I understand to be essentially a grantee. Those are the two Supreme Court cases dealing with the contractor versus agency distinction, and they focus primarily on the operation, the control of day-to-day operations within the entity. And they appropriately do that because that's how the courts distinguish a contractor from an employee. And both of those cases they find the entity is supervising its own day-to-day operations. It's not being supervised by, for example, the OEO, the Office of Economic Opportunity, which provided the grant funding to the Community Action Agency in Orleans. The analysis in Maryland relating to the National Guard is similar because the question was, were they a state entity or a federal entity? And the court there found that because of who was doing the appointing, who was doing the control of the day-to-day operations, and what the purpose was. The National Guard caretaking purpose was to take care of property that was treated essentially as state property. It was a state job to take care of that National Guard property, even though it was purchased with federal dollars and the folks were paid with federal dollars. So those cases in the government's view can be set aside because the question here is not, do we have a contractor? The Semi-Quincentennial Commission is not a contractor with the federal government. Instead, the question is, is it some sort of independent establishment or other entity that is not provided for in that list of examples? Or is it an independent establishment which is in the list of examples but could use some definition, which was what the court was doing in Expeditions Unlimited dealing with the Smithsonian. So when we have the unprovided-for case, we follow Expeditions Unlimited and Mindrala from the Seventh Circuit dealing with Freddie Mac, and ask whether the entity functions like, looks like, a federal agency based on purpose and mission, funding, and oversight or control. So where, as with the Semi-Quincentennial Commission, the entity has a federal purpose and mission, planning for the national celebration, coordinating it with national, state, local, and private organizations, et cetera, receives most of its funding for operations from federal appropriations, which Judge Krause noted some information about that is in the record. It sounded like Your Honor may have also looked at some of the other reports of the Semi-Quincentennial Commission, which we think it's appropriately to judicially notice here, and has federal oversight through, in this case, a substantial portion of government membership on the governing board. That would be the eight congresspeople who sit on the commission, and the other 16 members of the commission who are congressionally appointed. You put funding then under purpose and mission? Oh, no, I put funding under its own test. You have three factors, purpose and mission, funding, oversight, control. Yes. And why should we apply that test as opposed to, I mean, you can leave this for your supplemental letter if you prefer, but if you want to say anything now about, you know, the 11th Amendment analogy, is there something in the text here that's different or the history of the statute that calls for a different test? I think I may not entirely understand your question, Your Honor. With respect to the question of is there something in the text of this statute, I would point the court towards some textual addition that I think you may have discovered on your own, suggesting that Congress thought this was a federal entity, including Section 6B relating to the responsibility of other federal agencies. I've got that. Okay. I'm asking about the text of 2671. Okay. Is there anything in there that points us towards or away from assimilating this to the arm or instrumentality of the state for the 11th Amendment purposes? I think the 11th Amendment analogy works by example, where we look at questions of whether an entity where there's a debate about whether it's an arm of the state, not an arm of the federal government, is controlled by the state government, is funded by the state government. And so I see similarities there. I'm not in the weeds of the 11th Amendment jurisprudence at this moment. It's an analogy. But I think it's an analogy, and I think it's a reasonable analogy. We've gone in more recently in Maliandi and before that in Fitcheck into some detail in how those might be laid out and organized, and perhaps in the 28J letters, that's something the parties might address, whether that can be transposed directly into the FTCA context. Certainly, Your Honor. I would like to, I guess I'm not going to point out particular textual indicia. I think the Court understands that. I would point out that the commissions that appellants identify in their briefing for the purpose of saying, you know, Congress said in some cases that a commission is a federal agency for FTCA purposes, but didn't do it here, and we should read something from that. I wanted to point out that those are all quite distinguishable in terms of their federalness of their membership. The Commission on the Advancement of Women and Minorities has 11 members, none federal employees. The Glass Ceiling Commission, 21 members, one federal employee being the Secretary of Labor, so one out of 21. What about the fact that the majority of the members here, once appointed, it appears that they're not subject to the normal regulations that would apply to federal employees, and that they may be asked to resign, but there doesn't appear to be a mechanism for them to be terminated. Even below the chairperson, it looks like the chairperson even has discretion, at least according to the allegations, to select the executive director. So the president appoints the chair, and as we've seen, as alleged in this complaint, the president has asked the chair to resign. A new chair was then appointed by the Biden administration, who then asked the executive director to resign, which he did. So there is that piece of control as well. And in terms of the other membership of the commission, it's correct that the statute does not provide for removing commissioners, but I don't think that can be dispositive if we contrast, for example, the Federal Reserve Board of Governors, which has been found to be a federal agency for this purpose. There are, you know, the chair of the Federal Reserve is not, I don't believe, removable. Could these be classified properly as volunteers? The commission members are appropriately classified as volunteers, which is because they're not being paid, if we're talking about that part of the definition of employee of the government within the FTCA definition section. Sorry, I wanted to let you finish your discussion on the statute. I want you to get to jurisdictional discovery, but after you finish this.  So in the briefing, appellants make much of the fact that these people are unpaid, the commission members. The FTCA's definition of an employee explicitly provides for volunteers to be employees of the federal government. So whereas here the people are appointed by Congress using their time and energy for a purpose that Congress has found to be important, it is consistent with the broad definition of employee and a federal agency and the statute to treat them as federal employees for purposes of the FTCA. Indeed, there's no indication that Congress thought that they would appoint people to this commission to do this job, that people doing that job would speak out about perceived mismanagement on the commission or perceived lack of stewardship of federal funds and have their own bank accounts at risk for that. Instead, it makes more sense, it seems, to think that Congress would understand that those people's personal bank accounts would be protected as any federal employee is, which I don't want to get into the legislative history of the Westfall Act, but that is the purpose. Well, at least so long as it's within the scope of their employment. That's correct. And so that is an excellent segue to the scope of employment issue where I understand, I know Judge Bevis wants to hear about the certification. Before I get there, where I think we may spend some time, I just want to make the broader point that Milo is the wrong case to govern this dispute. I think we make that point clear in our briefing. In Milo, there was a dispute as between the parties before the district court about whether the thing at issue, the conduct at issue, happened at time one or time two. And if it happened at time one, it was within the scope of employment. And if it happened at time two, it was not within the scope of employment. Why isn't there just the same kind of dispute here about whether the purpose was to serve the master, a sort of antiquated terminology, but we have the restatement to work with. And they've got one view of that. You have another. Why is that the analogy? Because under this court's prior precedential decision setting out the standard, Shro, Milo, Brumfield, if you read those together, the question is whether once a certification of scope of employment has been provided, then it is up to the plaintiffs below to come forward with specific facts rebutting it. And where they don't do that, where there are no specific facts relevant to the scope of employment that are being disputed, then there is no reason for discovery. Here, the facts being disputed, which I believe is primarily the intent, and what is, you know, whether talking to the media is within or without the scope of employment of these commissioners, both of those can be decided, as the district court did, as a matter of law, by looking to the Pennsylvania law of respondeat superior and the restatement. From those sources, we know that, for example, having personal animus while also acting with the benefit or with an incident to conduct that's within the scope of your employment does not take the conduct outside the scope of employment. Here, it's abundantly clear from the text of the statements, from the text of the statements that were made at a prior commission meeting, that that's exactly what these commissioners were doing. They were raising their concerns about the leadership, the management, the stewardship of the federal appropriations. Well, help me to understand, then, why your certification isn't just based on the complaint. Why is it based on materials prepared in anticipation litigation provided by staff at the U.S. Attorney's Office after consulting with Holmes, Griffin, and Swanson with a footnote saying, hey, we're reserving work product and attorney client on these factual representations. If that were the case, you would have just rested on that and said it's a matter of law in the face of the complaint, but you didn't. So a couple of responses to that that all kind of weave together. First, in the hypothetical, very simple scope of employment case, a postal truck runs a stop sign and hits a car crossing an intersection. There is always a question to be resolved by the U.S. Attorney before she can certify scope of employment about whether that postal driver was on their route, doing their work, or were they on a frolic and detour, you know, off to get a snack. And that always requires looking beyond the contours of the complaint because the complaint doesn't know what the driver's route was. The complaint doesn't know what the postal driver's, you know, hours of employment were and when the truck was supposed to be returned. Instead, that requires a consultation, probably through counsel with the agency, possibly through interviewing the driver, to find out whether that person was acting within the scope of their employment. And then with that information, the U.S. Attorney can certify or not that the driver was acting within the scope of their employment. Well, if you're looking at these facts beyond it, why can't they get discovery? So that is not the discovery that Schrobe, Melo, Brumfield are talking about. They are talking about what are the facts that the plaintiff can point to to allege that the conduct is not happening within the scope of employment and then does discovery need to happen on that issue. In the complaint, what they've alleged is that there was no benefit to the commission, that, in fact, this was antithetical to the existence and mission of the commission. And there's also the suggestion, at least, that speaking to the various government representatives and to the media, that that's motivated not as a matter purely of retaliation for not getting a contract to oust leadership and have different leadership where perhaps there'd be the ability to resume on the course that Mr. Holmes had preferred as to strategy. So those are the allegations of the complaint. Presumably, you concluded that there was something that was actually benefiting the commission, at least in part, and there's a dispute about that with you having relied on other facts. Why aren't they entitled to discovery? So, Judge Krause, I see my time has expired. Thank you. With respect to the analysis in the court below, no evidence outside what is in the record before this court was taken into account. We took the position, the government took the position, that based on the pleadings, the attachments to the pleadings, and the few other things that went into the record on the motion for substitution and to dismiss, show that under Pennsylvania law, their conduct was incidental to a dispute that was preexisting. You can see it aired in the September 2021 commission statements that are in the record, and that the statements to the media that form the basis of the defamation claims are essentially overlay on those. They match up. It's the same dispute. And under Pennsylvania law, where the conduct that's alleged to be outside the scope of the employment is incidental, is arising out of a dispute that's clearly a workplace dispute, that does not then permit the plaintiffs to take it outside the scope of employment. Same as allegations that commission members weren't to be speaking to the media. Conduct that is contrary to a policy is not enough to take it outside the scope of employment. Although it's a D.C. law case, that's a lot like the Clinton private e-mail servers case, right? She is doing the work of the Secretary of State. She's just doing it, as that case describes it, you know, in an unauthorized way on the wrong servers. So here the commissioners are doing the work of the governing body of the commission, charged with shepherding this nearly $50 million of federal appropriations, charged with overseeing the planning of the 250th anniversary celebration. So they're speaking to the press about the same dispute that was brought up internally, that had been clearly according to the documents attached to the complaint and the allegations of the complaint aired over a period of time with the commission. There's nothing that takes it outside of it. And so you characterize that as a workplace dispute, a sort of bona fide dispute about the activities of the commission. They've characterized it as having no legitimacy behind the allegations and its sole purpose being either retribution or some other sort of nefarious reaction to the not getting a contract. So I mean, it doesn't beg the question to say like, oh, we can see that it was a workplace dispute and therefore within the scope. That's not what's on the face of the complaint, is it? The face of the complaint alleges that they were motivated by animus. But we know that a motivation, an animosity is not enough to take something out of the scope of employment. Those same allegations of animus were made in a number of the other cases. That's true, but their allegation is it's motivated purely by animus. And I'm not sure that's a well-pleaded allegation. So if we look at like the district court, I'm sorry, the D.C. Circuit case involving Congressman Murtha, there are the allegations where he was only doing it to, he wasn't doing it in the scope of employment. He was only doing it to engage in a dispute with, I think, the Secretary of the Defense. And the district court there went through essentially like an Iqbal sort of Twombly analysis and said looking at this complaint, are those conclusions about motivation well-pleaded? And here the same thing is doable. And I think that's probably what the district court did. The district court was very specific that the facts that she relied upon are gleaned from plaintiff's complaint and the briefs in support of and in opposition to the government's motion and noted that most facts are not disputed, but where they are disputed, they are construed in plaintiff's favor. That's note five on page three, which is in the joint appendix at page nine. And that is exactly what is appropriate for the district court to do here, where there is no fundamental dispute about whether the conduct of issue happened, as in Milo, that's a Milo circumstance here, there is no dispute that these statements were made, and where plaintiffs have not come forward with specific facts showing that the conduct was outside the scope of employment. And that goes through a gloss of Pennsylvania law, which goes through a gloss of the second restatement on what is actually relevant to the analysis, not simply the fact that it is in part motivated by personal animosity or may violate the policies and procedures of the organization. You're interjecting the in part, and where they have alleged that that is the only basis for these statements. And we have Pennsylvania law that says you can look to things like whether the conduct is outrageous to ascertain whether it's within the scope. That's also, as they've alleged it to be outrageous in the purposes and consequences, reputationally and employment wise. Why should this be resolved just on the 12B6 stage, essentially, rather than allowing this to have some discovery before it's just knocked out? Because they haven't sufficiently pleaded, in your view, that the purpose and motivations are outside of the interests of the commission. I think that while we're looking at it like a 12B6 motion, because it's not in a summary judgment posture where there has been discovery and there are unresolved facts that necessitate a hearing, what doesn't need to happen, what the teaching is from the Third Circuit's prior cases, is that until the plaintiffs raise that dispute in a way that has some legs, if they're making allegations but they are simply alleging the legal conclusion it was outrageous, then that's not what needs to be relied on by the district court. But they allege more than that. They allege there was an investigation afterwards, that it's totally unsubstantial. Sure. And we don't look at the outcome. We don't look at the effect of the conduct. If we look at the effect of the conduct, then that would take all of the use of force cases, for example, outside the scope. And we know that use of force isn't always outside the scope. So, for example, in the Justice case, the Pennsylvania Supreme Court case that Your Honor pointed to, my recollection is that the Supreme Court determined that there was a jury issue of whether the trooper's use of force was appropriate or not, given the circumstances. In some of the other cases that are in the parties' briefs, so, for example, the CNA case, I think that's a Third Circuit case involving the Army recruit who was not authorized to stay at the recruiter's home but did anyway found a gun, shot a robbery victim. The question isn't, is the shooting of the robbery victim really bad? Is the shooting of the robbery victim going to cause a problem? The question was whether this person was authorized to be in the home where he found the gun. So here we're looking at the statements. We're not looking at the effect that the statements had on anybody else down the road. The conclusion that they have no basis when we're looking at what the purpose is, whether it's serving the commission or not serving the commission, would seem to be relevant, right? Right. So the purpose of serving the commission, the district court appropriately gleaned from the content of the statements themselves and the relation to prior statements that had been made at commission meetings, the purpose of the commission and the purpose of the commissioners, analogous to like members of a board of directors who are responsible for the strategy setting, oversight, shepherding of the organization. And so when we look at the content of statements about what is being done with the federal money, who are the contracts going to, are the decisions made by leadership being voted on when the rules say they should be voted on, those sort of core to the oversight function aspects of the statements, the district court appropriately concluded, yes, this is what you all do in your employment as commissioners as a matter of law, looking at the statute, looking at the statements, looking at the allegations of the complaint. Thank you. And we ask that the district court's opinion be affirmed in all respects. Thank you. I'll be taking the lead on rebuttal in this matter. I wanted to address the Melo II test, because my colleague has stated that Melo II is not the correct test. And I would like to just read from Melo II itself. Ms. Mailer has stated that the Schrobe test is the correct test to apply. That was decided in 1992. In 1994, Melo II said, because the precise issue presented here was not presented in Schrobe, and because we now have the benefit of the insights of the en banc majority and dissent in Wood, we take a fresh look at the appropriate scope of a district court's review of a certification under the Westfall Act. And in Melo II, the court said, because we are going to allow the government to consider facts outside of the complaint, we are also going to permit, in that circumstance, a chance for discovery. Where in Melo II are you? Yeah, I'll find you the page number. It's under Section 3. On my copy of the case, it's page 7. It's page 742 of the actual case. 742, all right, thank you. Now, the government's reliance on Brumfield is also misplaced. Brumfield is interesting. If you take a look at that case that was decided in 2000 before this court, the district court specifically noted that Brumfield, the plaintiff, had already had an opportunity to conduct discovery. This was before the internal investigation and the internal tribunal of the Federal Bureau of Prisons. So the district court took into consideration that the plaintiff had already had a chance to conduct whatever discovery he wanted and then drafted and filed a complaint in federal court. And in the certification in Brumfield, the Attorney General, and I'm quoting here, reiterated that her conclusion that the individual defendants were acting within the scope was based on the allegations in the complaint. That's not what we have here. So the test is you're not disputing that the statements themselves in the appendix, they're referred to, they're relied on by the complaint. We can look at those on a 12B6 type standard, right? Absolutely, Your Honor. And that would be plenary review under my second category, which is scope of employment. I'm not going to get into the weeds on that. I took the thrust of Ms. Nellie's presentation to be, look, if they had stood up and accused your clients of being adulterers or tax cheats or something, you could look at that on the face and say, well, that's a fraud, a detour, or maybe there's some way in which tax. But these statements on their face relate to the operation of the commission. And so under Twombly and Iqbal, you cannot read these as being solely about a personal vendetta. There's enough of a connection to this incident that even if there's a personal motivation of revenge, whatever the primary motivation is, there's enough connection to bring in the scope of employment. Just as the drunk driver who's going on his delivery route, you know, as long as he's on his route in the company car, we don't ask whether he's, you know, drinking to serve the master because the driving along the route is enough. Yes, Your Honor. We addressed that analogy in our briefing, and I find it interesting because in my analogy, the drunk driver is turning around and driving into the building of his employer. That's what I'm saying when I say the purpose is to serve the master in part, cannot coexist in this scenario with a beneficial intent to the master. Why can't it? Say, you know, time, space, persons, subject. These are not just random smears he's hurling. He's hurling smears that have to do with the operation of the commission. Yes, Your Honor, and this is specifically addressed under Pennsylvania state law, which is, of course, what we're looking at in the Weisenbach opinion. And again, I know it's not binding on this Court, but it's very on point. The Court stated, but the mere fact that one speaks about his employment, in this case to the media, does not mean that the speech was made in connection with his employment or with a purpose to serve it. So we are not looking at a dual motive scenario, as the government suggests, as contemplated in the Restatement Second of Agency under Section 236. That's not what this is. This is rather unprecedented, I will say, where we're looking at a scenario, at least as alleged, where the purpose of the commissioners was to harm the commission. And at the very least, there's a genuine dispute of material facts as to that allegation in the complaint. But to be fair, your argument is that even if the subject matter on its face appears to be work-related, if the purpose of it and the content of what's being communicated is, in fact, baseless and counter to the interests of the employer, that that would still be outside the scope, even though on the face related to work. Precisely, Your Honor, and I think that's the only workable result, really, because if you have two colleagues who have personal anonymous for whatever reason, that's governed by the restatement. If you have a situation here where, as alleged, the employee is acting with the purpose to harm the employer, then it's a different question because it takes you outside of the interpersonal relationship that has been addressed by the restatement. And that puts you in a position where you're evaluating the conduct of the employee in relation to its relationship with the employer. And, again, I think it's unprecedented where you've had an allegation that reaches this level of review, where the allegation is that the employees were simply using the guise of the commission or the master to harm the commission or the master. I see that I'm out of time unless there's any other questions. Thank you. Thank you. We thank both counsel for an excellent briefing and argument, and waiting through a long morning and early afternoon. This would also be helpful to have a transcript with cost shared by the parties.